USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/22/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
AGCS MARINE INSURANCE COMPANY, :
LIBERTY MUTUAL INSURANCE COMPANY, :
and STARSTONE NATIONAL INSURANCE : 1:16-cv-6899-GHW
COMPANY, *f/k/a Torus National Insurance Company*, :
: MEMORANDUM OPINION
Petitioners, : AND ORDER
:
-v- :
:
HYMEL & ASSOCIATES, LLC, and JOSEPH C. :
HYMEL, *a/k/a J.C. Hymel,* :
:
Respondents. :
:
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

The M/Y Lucy Belle is a 62 foot recreational motor yacht based in Slidell, Louisiana. In the summer of 2014, she was dropped while being lowered into the water by a marine travel lift, suffering a cracked hull and damage to her running gear. Her insurers dispute the amount, if any, that they must pay to repair the damage from the fall and have brought this petition to compel arbitration of the dispute before the American Arbitration Association in New York. The Respondents here are Mr. J.C. Hymel, the Lucy Belle's named insured, and Hymel & Associates, LLC, a limited liability company which owns the vessel. Respondents argue principally that Hymel & Associates did not agree to arbitrate this dispute, and that the arbitration provision in question is ineffective as to Mr. Hymel because it is ambiguous. The Court agrees with Respondents that Hymel & Associates did not agree to arbitrate, but concludes that the agreement to arbitrate is effective as to Mr. Hymel. For these reasons, the petition to compel arbitration is GRANTED IN PART and DENIED IN PART.

I. **BACKGROUND**

   A. **Factual Background**

Petitioners AGCS Marine Insurance Company, Liberty Mutual Insurance Company, and StarStone National Insurance Company ("Petitioners") bring this petition to compel arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. Dkt. No. 1 (the "Petition"). Petitioners are the named underwriters and insurers to a Pantaenius America Yacht Policy (the "Policy"), which was issued in order to provide certain insurance coverage for the M/Y Lucy Belle. *Id.* ¶ 3. The Respondents here are Mr. J.C. Hymel and Hymel & Associates, LLC ("H&A") (collectively with Mr. Hymel, "Respondents"). *Id.* ¶ 8. It is undisputed that the Lucy Belle is titled to H&A, a limited liability company whose only members are Mr. Hymel and his wife, Mrs. Patsy Hymel.

The Petition invokes an arbitration clause contained in Section A11 of the Policy. *See* Petition ¶ 17 ("The [Policy] contains the following arbitration clause . . . .") (quoting Section A11 of the Policy); *see also* Affirmation of Gerard W. White, Esq. (Dkt. No. 3) ¶ 6 ("The Arbitration Clause is set forth at Section A11 of the Policy . . . ."). Section A11 of the Policy states:

> This insurance policy shall be governed by and construed in accordance with well established and entrenched principles and precedents of substantive United States Federal Maritime Law, but where no such established and entrenched principles and precedents exist, the policy shall be governed and construed in accordance with the substantive laws of the State of New York, without giving effect to its conflict of laws principles, and the parties hereto agree that any and all disputes arising under this policy shall be resolved exclusively by binding arbitration to take place within New York County, in the State of New York, and to be conducted pursuant to the Rules of the American Arbitration Association.

Policy, Section A11 (annexed as Ex. E to Declaration of Janet Bianco) (Dkt. No. 4). The application for insurance on which the Policy was issued was completed and signed by Mr. Hymel. *See* Application Form for Yacht Insurance (annexed as Ex. D to Bianco Decl.) (the "Application").

The Petition avers that the Lucy Belle was dropped on or about August 27, 2014, while being moved back to the water by a marine travel lift in Slidell, Louisiana. Petition ¶ 9. Petitioners

dispute the amount that they owe under the Policy. *Id.* ¶ 12. According to the Petition, Respondents claim that Petitioners owe an amount that is "far in excess of what Petitioners consider to be fair, reasonable and loss-related repair costs" and "incudes components that are not compensable under the policy's terms and conditions." *Id.*

### B. Procedural Background

Petitioners demanded arbitration before the American Arbitration Association ("AAA") on May 20, 2016, pursuant to Section A11 of the Policy. That demand was apparently filed under the AAA's Commercial Arbitration Rules. On June 21, 2016, before Respondents answered the demand, the AAA wrote to counsel for Petitioners and to Mr. Hymel, stating that the AAA "has determined that the Consumer Arbitration Rules . . . apply to this dispute." *See* Letter from AAA, dated June 21, 2016 (annexed as Ex. 1 to Memorandum of Law in Opposition to Petition to Compel Arbitration) ("Resp. Mem."). The letter further stated that the arbitration provision pursuant to which arbitration was demanded "has a material or substantial deviation" from Principle 7 of the AAA's Consumer Due Process Protocol, which requires a "reasonably convenient location for in-person hearings." *Id.* The provision was problematic, according to the AAA, because the arbitration provision states that arbitration will take place in New York County, New York. *Id.* The AAA's June 21 letter concluded: "However, so that we may commence administration of this matter, we are requesting that the business waive the above provision(s) and agree to have this matter administered under the Consumer Rules and [Due Process] Protocol." *Id.* at 2.

It is undisputed that Petitioners did not waive their demand for arbitration to take place in New York. On July 12, 2016, the AAA again wrote to counsel for Petitioners and Mr. Hymel. That letter referenced the AAA's June 21 letter which "notified [the claimant] that the filing requirements for the . . . matter have not been met," and stated that the "filing deficiency has not been cured." *See* Letter from AAA, dated July 12, 2016 (annexed as Ex. 2 to Resp. Mem.). That letter notified the parties that, given the uncured filing deficiency, the AAA had "administratively closed the file." *Id.*

3

Petitioners re-filed their demand for arbitration with the AAA on September 1, 2016. That demand was again filed under the Commercial Arbitration Rules. *See* American Arbitration Association Online Filing Acknowledgment (annexed as Ex. C to White Aff.). Following an exchange of letters among the parties and the AAA, the AAA wrote to counsel for Petitioners and Respondents on October 12, 2016, acknowledging receipt of an objection by Respondents to the location of the arbitration. *See* Letter from AAA, dated October 12, 2016 (annexed as Ex. 6 to Reply Affirmation of Gerard W. White, Esq.) (Dkt. No. 24). The letter stated that "the parties' contract stipulates the locale of New York, NY. Therefore, administration of this matter shall be conducted by the Northeast Case Management Center." *Id.* at 1. The letter continued, however, that "[q]uestions regarding jurisdiction, applicable rules or locale can be raised with the arbitrator after appointment." *Id.*

During the course of briefing on the Petition, Respondents brought a motion in Louisiana state court seeking leave to file an amended petition adding Petitioners as defendants to a pending lawsuit concerning insurance coverage for damage to the Lucy Belle. *See* Motion and Incorporated Memorandum for Leave to File Third Supplemental and Amending Petition (annexed as Ex. 4 to White Reply Aff). The filing of that motion in Louisiana state court prompted Petitioners here to file a motion seeking an order from this Court enjoining Respondents from proceeding against them outside of AAA arbitration, and staying the Louisiana state court litigation. *See* Dkt. No. 28. The Court thereafter held a telephone conference with the parties, during which Respondents' counsel agreed to dismiss that action without prejudice as to the Petitioners, who had in any event not been served yet, pending this Court's ruling on the Petition.

**II.    LEGAL STANDARD**

The FAA was enacted to "replace judicial indisposition to arbitration with a national policy favoring it . . . ." *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (internal quotation marks and brackets omitted). The FAA is "is an expression of 'a strong federal policy favoring

4

arbitration as an alternative means of dispute resolution.'" *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)). Under Section 2 of the FAA, as a general matter, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also provides that parties can petition the district court for an order compelling arbitration under 9 U.S.C. § 4. Section 4 of the FAA provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . . .

9 U.S.C. § 4. A party has "refused to arbitrate" within the meaning of Section 4 if it "commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." *LAIF X SPRL v. Axtel, S.A. de D.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (citation and brackets omitted); *see also Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) (finding no refusal to arbitrate where respondents had not commenced litigation nor failed to comply with an order to arbitrate by the AAA).

In deciding a motion to compel arbitration under Section 4 of the FAA, "the court applies a standard similar to that applicable [to] a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Thus, "it is proper (and in fact necessary) to consider . . . extrinsic evidence when faced with a motion to compel arbitration," *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 CIV. 839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 32 (2d Cir. 2001)), and "[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to

be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *accord Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) ("Allegations related to the question of whether the parties formed a valid arbitration agreement . . . are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial.").

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *see also Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense.") (internal quotation marks omitted). In determining whether to compel arbitration, the Court must conduct the following inquiries:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)).

### III. DISCUSSION

As discussed below, H&A cannot be compelled to arbitrate because it did not sign the Application upon which the Policy containing the arbitration clause was issued, and because Petitioners have not demonstrated that a valid basis exists to nevertheless compel H&A to arbitrate. The arbitration clause, however, unambiguously requires Mr. Hymel to arbitrate and must be enforced in that regard.

6

### A. Whether Hymel & Associates, LLC Agreed to Arbitrate

H&A takes the position that it cannot be compelled to arbitrate, because it is a "nonsignatory to the arbitration agreement" and because Petitioners "have established no theory to bind the company thereto." Resp. Mem. at 5. Rather, the "only written agreement for purposes of 9 U.S.C. § 4 is that between Mr. J.C. Hymel and the Petitioners." *Id.* at 6. Respondents accordingly ask the Court to decline to enforce the arbitration agreement against H&A. Because Hymel & Associates did not sign the Application upon which the Policy containing the arbitration clause was issued, and Petitioners have not shown the applicability of any of the narrow exceptions to the rule requiring an express agreement to arbitrate, the Court agrees that H&A cannot be compelled to arbitrate.

"[A]rbitration is a matter of contract and . . . parties cannot be compelled to arbitrate issues they have not specifically agreed to submit to arbitration." *Shaw Grp. Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (internal citations omitted). "Absent an express agreement to arbitrate, [the Second Circuit] has recognized only 'limited theories upon which it is willing to enforce an arbitration agreement against a nonsignatory.'" *Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 780 (2d Cir. 1995)). "There are five such theories: '1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" *Id.* (quoting *Thomson*, 64 F.3d at 776); *accord Ross*, 547 F.3d at 143 n.3.

In this case, Petitioners do not argue that H&A signed the Application. Petitioners nevertheless argue that H&A must be compelled to arbitrate. They argue that this result is mandated because H&A is an "insured" under the Policy. They also rely on an agency theory. Petitioners' first argument is foreclosed by the language of the arbitration agreement and binding precedent. The text of the arbitration provision does not by its terms mandate that an insured that is not a party to the agreement must arbitrate. The arbitration provision requires, instead, that the

7

parties to the agreement ("the parties hereto") submit to arbitration. As will be discussed, H&A itself is not a party to the Application. As a result, there is no textual support for Petitioners' argument.

There is also no other established rule that would require any insured under the Policy to arbitrate, regardless of whether or not they sign the relevant agreement, as suggested by Petitioners. As noted above, the Second Circuit has recognized five "limited theories" upon which an arbitration agreement may be enforced against a one who has not signed an arbitration agreement. An individual or entity's status as the beneficiary to an insurance contract is not among the available theories, and this is accordingly not a valid basis on which to compel H&A to arbitrate.

Petitioners' agency argument, much like the Lucy Belle's fractured hull, does not hold water. "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1 (2006). "Traditional principles of agency law may bind a nonsignatory to an arbitration agreement." *Merrill Lynch*, 337 F.3d at 130 (citation omitted). Under these traditional principles, a court may find that a party signed a contract as an agent for a principal where the contract at issue so indicates. *See, e.g., John F. Dillon & Co. LLC v. Foremost Maritime Corp.*, No. 02-cv-7803 (SHS), 2004 WL 1396180, at *4 (S.D.N.Y. June 21, 2004) ("Foremost signed the contract as an agent: the signature line reads 'Foremost Maritime Corporation as agents' above the signature of Foremost's president."); *O'Sullivan v. Hardy Machinery Corp.*, 1993 WL 190342, at *3 (S.D.N.Y. June 2, 1993) ("In the case at hand, the Court finds that Hapag was acting as an agent for its principal at all relevant times during the transaction. The bill of lading names Hapag–Lloyd (America) Inc., as 'Agent' for the Carrier."); *see also Dun Shipping Ltd. v. Amerada Hess Shipping Corp.*, (RMB) (KNF), 2005 WL 7870783, at *11 (S.D.N.Y. Oct. 5, 2005) ("In deciding whether a signatory to a contract was acting in an agency capacity for a nonsignatory, courts look first to the language of the

8

contract(s)."), *adopted by* 2006 WL 2291024 (S.D.N.Y. Aug. 3, 2006).

There is no indication in the Application that Mr. Hymel signed the Application as agent for H&A, rather than in his individual capacity. It is not disputed that Mr. Hymel is a member of H&A and that he is its registered agent. *See* Reply Memorandum of Law in Support of Petition to Compel Arbitration (Dkt. No. 25) ("Pet. Reply") (citing Exs. A and B to White Aff.). However, as Respondents observe "[t]here is no indication anywhere on that page that Mr. Hymel signed the application on behalf of a corporate entity." Resp. Mem. at 9. Indeed, H&A is not mentioned at all in that document. Mr. Hymel's signature is not accompanied by language indicating that he signed, for example, "as agent" or "on behalf of" H&A. Instead, Mr. Hymel's signature is preceded by an endorsement that reads: "*If* the named insured is a business entity, the undersigned warrants they have legal authority to execute on behalf of the entity." Application at 6 (emphasis added). However, the named insured listed in the Application is *not* the business entity, H&A—it is the individual, Mr. Hymel. *See id.* at 1-2.[1] There is no indication in the Application that Mr. Hymel signed the agreement as agent for H&A, rather than, or in addition to, signing it in his personal, individual capacity as the named insured. In the absence of such a signal, H&A cannot be compelled to arbitrate based upon Mr. Hymel's personal signature. *See, e.g.*, *Carte Blanche (Singapore) PTE, Ltd. v. Diners Club Intern., Inc.*, 758 F. Supp. 908, 920 (S.D.N.Y. 1991) ("[N]ot only is CBC not a named party to the contract, but the Agreement itself contains no representations by CBC, the purported principal, to [the parties to the contract] as to CBI's authority as its agent."); *Gen. Auth. for Supply Commodities v. S.S. Capetan Costis I*, 631 F. Supp. 1488, 1490 (1986) (denying motion to compel arbitration where "[t]here [was] no indication in this contract that [the purported agent] signed on behalf of, or as an agent of, [the purported principal]" and "[n]one of the usual language indicating an agency relationship [was] present."); *see also AICO Intern., E.C. v. Merrill Lynch & Co., Inc.*, 98 F.

---

[1] Had the named insured in the Application been listed as H&A rather than Mr. Hymel, the Court might reach a different conclusion on this question.

App'x 44, 46-47 (2d Cir. 2004) ("[C]onclusory allegations of a general agency relationship between a signatory and non-signatory do not suffice to compel these unwilling non-signatories to arbitrate . . . .") (citing *Merrill Lynch*, 337 F.3d at 130-31); *Masefield AG v. Colonial Oil Indus., Inc.*, No. 05-cv-2231 (PKL), 2005 WL 911770, at *5 (S.D.N.Y. Apr. 18, 2005) ("A full showing of agency supported by an accepted theory of agency or contract law is required, and generalized allegations of affiliation are insufficient" to compel arbitration by one who did not sign the agreement).

Petitioners also argue that Mr. Hymel "could only have signed the insurance application in his capacity as 'Agent' of the limited liability company because he has no standing as an individual to claim insurance proceeds for the company's property." Pet. Reply at 4. Petitioners rely on La. Rev. Stat. § 12:1329, which provides, in part, that a "member shall have no interest in limited liability company property." They also cite a passage from *Zeigler v. Hous. Auth. of New Orleans*, 118 So. 3d 442 (La. App. 2013) which reasons that, by virtue of § 12:1329, "members of a limited liability company have no right to sue personally for damages to limited liability company property." *Id.* at 450 (citations omitted). These authorities are unhelpful to Petitioners, however, in the context of this petition to compel arbitration. The question presented to the Court is whether H&A can be compelled to arbitrate. The Court is not asked to determine whether Mr. Hymel has any "interest" in the "property" of H&A nor whether he has "standing as an individual to claim insurance proceeds" for property of H&A, and takes no position on those questions or the related questions of whether and to what extent H&A is insured.

In sum, the Court agrees with H&A that it cannot be compelled to arbitrate, because it did not sign the Application upon which the Policy and its arbitration clause were issued, and because Petitioners' arguments that H&A must be compelled to arbitrate notwithstanding this fact are unpersuasive. The Petition is therefore denied as to H&A.

### B. Enforceability of Arbitration Agreement Against J.C. Hymel

Mr. Hymel argues that the arbitration clause at issue is "ambiguous" and that for this reason,

10

the motion to compel him to arbitrate should also be denied. Resp. Mem. at 14. He argues that the "last antecedent rule" compels an interpretation of the clause under which he need not arbitrate. The text of the arbitration clause at issue is as follows:

> This insurance policy shall be governed by and construed in accordance with well established and entrenched principles and precedents of substantive United States Federal Maritime Law, but where no such established and entrenched principles and precedents exist, the policy shall be governed and construed in accordance with the substantive laws of the State of New York, without giving effect to its conflict of laws principles, and the parties hereto agree that any and all disputes arising under this policy shall be resolved exclusively by binding arbitration to take place within New York County, in the State of New York, and to be conducted pursuant to the Rules of the American Arbitration Association.

Bianco Decl., Ex. E at 10. Because this provision unambiguously requires Mr. Hymel to arbitrate, his opposition to its enforcement must be rejected.

"The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016); *see also Schnable v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law."); *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295-96 (2d Cir. 1999) ("[W]hile . . . the FAA preempts state law that treats arbitration agreements differently from any other contracts, it also preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate.") (internal quotation marks and footnote omitted); *Buchman v. Weiss*, No. 08-cv-5453 (RJS), 2009 WL 2044615, at *2 (S.D.N.Y. July 15, 2009) ("The threshold issue regarding the existence of an agreement to arbitrate is decided by reference to state contract law."). While the parties have not briefed the issue of which state's law applies to interpretation of the provision at issue, the agreement containing the arbitration provision contains a New York choice of law clause, and the parties' respective positions rely on cases applying New York law. As a result, the Court will apply New York law in interpreting the arbitration provision. *See, e.g.*, *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (Where "[t]he parties' briefs assume" that a certain body of law

11

controls, "such implied consent is sufficient to establish choice of law."); *accord Digital Camera Intern. Ltd. v. Antebi*, No. 11-cv-1823 (MKB), 2014 WL 940723, at *3 (S.D.N.Y. Mar. 11, 2014) ("Such 'conduct' indicating the parties' consent to a given state's substantive law can consist of the cases cited and relied upon by the parties in their briefs, and their apparent decision not to raise the choice-of-law issue.") (citation and internal quotation marks omitted); *Fed. Ins. Co. v. Marlyn Nutraceutircals, Inc.*, No. 13-cv-0137 (JS) (ARL) 2013 WL 6796162, at *3 n.7 ("The Court will assume that New York law applies given the parties' briefs.").

"Under New York law, the key inquiry at the initial stage of interpreting a contract is whether it is ambiguous with respect to the issue disputed by the parties." *Bank of New York v. First Millenium, Inc.*, 607 F.3d 905, 914 (2d Cir. 2010). "'An ambiguity exists where the . . . contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.* (quoting *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)). "An unambiguous provision of the contract should be given its 'plain and ordinary meaning . . . .'" *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012); *see also Dream Spa, Inc. v. Fireman's Fund Ins.*, 2008 WL 355458, at *4 (S.D.N.Y. Feb. 6, 2008) ("Courts applying New York law have been clear in mandating that unambiguous contract provisions be enforced as written.") (collecting cases).

The provision at issue here is unambiguous—it has a "definite and precise meaning" and there is "no reasonable basis for a difference of opinion" as to its meaning. *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (citations and internal quotation marks omitted). On its face, the passage at issue reflects two separate agreements by the parties: one agreement concerns the substantive law that is to apply to interpretations of the Policy, and the second is the parties' agreement to arbitrate disputes arising under the Policy before the AAA. Mr. Hymel's urged interpretation is insufficient to find an ambiguity inasmuch as a "court should not

find [a] contract ambiguous where the interpretation urged by one party would 'strain the contract language beyond its reasonable and ordinary meaning.'" *Id.* (citation omitted).

The last antecedent rule does not compel a contrary result. This canon of construction[2] provides that "'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 271 (2d Cir. 2015) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). "[C]ourts have applied the rule only when the last antecedent can grammatically be modified by the limiting phrase." *Id.* On this front, Mr. Hymel argues that the arbitration clause in the passage quoted above "immediately follows the phrase 'the policy shall be construed in accordance with the substantive laws of the State of New York.'" Resp. Mem. at 15-16. As a result, the arbitration clause "would only apply when New York law applies to the agreement," and New York law only applies "when established an entrenched principles and precedents of substantive United States Federal Maritime Law do not apply." *Id.* at 16. However, Mr. Hymel argues, "[s]ince those principles and precedents are alive and well in the Southern District of Texas [sic], it therefore follows that arbitration is not mandated." *Id.*[3]

Mr. Hymel does not offer a proper application of the last antecedent rule. The phrase beginning with "and the parties hereto agree" (*i.e.*, the arbitration clause) is not capable of grammatically modifying the phrase that provides for the application of New York law where federal maritime law is not established; rather than serving as a modifier, the arbitration clause is a separate agreement among the parties. Mr. Hymel's reliance on the last antecedent rule is rejected. He is required to arbitrate the insurance dispute with Petitioners under the clear and unambiguous arbitration clause in the Policy. The Court declines to order that the arbitration take place in New

---

[2] The last antecedent "rule" is not a rule at all, but rather, a canon of interpretation. *Lockhart v. United States*, 136 S. Ct. 958, 963 (2016).
[3] Mr. Hymel also calls the Court's attention to the order of the United States District Court for the Southern District of Texas in *Worldwide Priorities, Ltd. v. Pantaenius American Yacht Ins., et al.*, No. 3:15-cv-00047, denying a motion to compel arbitration based upon the same arbitration clause as is at issue in this case. As Mr. Hymel concedes, however, that court denied the motion "without reasons, pursuant to a minute entry and order," Resp. Mem. at 15, rendering any persuasive value of that order essentially nonexistent for purposes of resolving the Petition.

York, however. As discussed immediately below, the location for the arbitration and whether the AAA's Consumer Arbitration Rules or Commercial Arbitration Rules apply to this dispute are questions for the arbitrator to decide.

### C. Whether the Consumer Arbitration Rules or Commercial Arbitration Rules Apply and Where the Arbitration Should Take Place

Lastly, although the Petition itself does not explicitly request a ruling on this issue, Petitioners argue in their memorandum of law that the arbitration must proceed before the AAA in New York. *See* Memorandum of Law in Support of Petition to Compel Arbitration (Dkt. No. 11) at 10. The parties also dispute in their briefs whether the AAA's Consumer Rules or Commercial Rules should apply to the arbitration of the underlying dispute. And, as has been discussed, the AAA takes the position that arbitration in New York is not appropriate if the Consumer Rules apply.

As noted above, the arbitration clause in Section A11 of the Policy provides, in pertinent part, that "*any and all disputes arising under this policy* shall be resolved exclusively by binding arbitration . . . ." (emphasis added). The issues of which set of the AAA's rules should govern arbitration of the underlying dispute and the location of the arbitration undoubtedly fall within this broad delegation of decision making authority to the arbitrator, rendering these questions inappropriate for resolution by this Court. *See, e.g.*, *PaineWebber*, 81 F.3d at 1199 (arbitration clause requiring arbitration of "any and all controversies" "evidenc[ed] the parties' intent to arbitrate all issues"); *see also Bechtel do Brasil Construçoes Ltda. v. UEG Araucaria Ltda.*, 638 F.3d 150, 152, 156 (parties agreed to "arbitrate *any* dispute relating to their agreement" in light of arbitration clause providing for arbitration of "[a]ny dispute, controversy, or claim arising out of or relating to" the agreement) (emphasis in original). Accordingly, the issue of whether the Consumer Rules or the Commercial Rules apply, and the location of the arbitration, are questions for the arbitrator, not the Court, to decide. The AAA has itself already stated that these issues will be resolved by the

14

arbitrator following her appointment, when it wrote to the parties on October 12, 2016 that "[q]uestions regarding jurisdiction, applicable rules or locale can be raised with the arbitrator after appointment."

## IV. CONCLUSION

For the reasons stated above, the Petition is GRANTED IN PART and DENIED IN PART. Mr. Hymel must arbitrate before the AAA, but Hymel & Associates is not required to do so. Whether the AAA's Consumer Arbitration Rules or Commercial Arbitration Rules apply, and where the arbitration will take place, are questions to be decided by the arbitrator.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: June 22, 2017
New York, New York

GREGORY H. WOODS
United States District Judge